**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

DANIEL JASON HARRINGTON,

    *Petitioner,*       CRIM. CASE NO.: 1:15-cr-20597
                            CIV. CASE NO.: 1:18-cv-13069
*v.*                             DISTRICT JUDGE THOMAS L. LUDINGTON
                            MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(R. 148)**

**I.**     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED.**

**II.**     **REPORT**

     **A.**     **Introduction**

Petitioner Daniel Jason Harrington (Harrington or Petitioner) filed the instant motion under 28 U.S.C. § 2255 to vacate his prison sentence (Mot. to Vacate, R. 148), and this motion is before the Court under an order of reference from United States District Judge Thomas L. Ludington. (R. 152.)

On February 7, 2017, Petitioner pleaded guilty to Count 11 of the third superseding indictment charging him with possessing with intent to distribute 5 grams or more of methamphetamine, also known as crystal meth and Ice, in violation of 21 U.S.C. §841(a)(1) pursuant to a Rule 11 plea agreement. (R. 121.) A judgment filed on September 28, 2017, sentenced Petitioner to 340 months' incarceration to be followed by eight years' supervised

release. (R. 142 at PageID.728-729.) Petitioner filed an appeal and on December 4, 2017, the Sixth Circuit Court of Appeals granted the government's motion to dismiss the appeal based on the appellate waiver provision in Petitioner's plea agreement. (R. 146.) The Court noted that Petitioner "does not dispute that his plea hearing comported with Federal Rule of Criminal Procedure 11(b), and he does not argue that he entered the agreement unknowingly or involuntarily." (*Id.*) The Court further held that "where, as here, the 'defendant testified at his plea hearing that he had reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not coerced,' a court may only conclude that he entered the 'plea agreement-and accepted the waiver of appellate rights contained therein-knowingly and voluntarily.' *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004)." (*Id.*)

On September 26, 2018, Petitioner filed the instant motion to vacate sentence pursuant to 28 U.S.C. § 2255. (R. 148.) The government responded (R. 161), and Petitioner replied. (R. 609, 610.) Petitioner also filed an affidavit in support of his motion. (R. 162.)

**B.     Standard of Review**

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486,

2

488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims previously brought and denied on appeal are generally not available to petitioners on collateral attack absent "exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

This rule works to prevent claimants from using collateral attacks to repackage arguments lost on appeal as ineffective assistance of counsel claims. Stated differently, a movant "cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal." *Clemons v. United States*, No. 3:01-CV-496, 3:97-CR-16, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)). *Accord, Lossia v. United States*, No. 04-80422, 2010 WL 3951078, at *4 (E.D. Mich. July 1, 2010). These claims, however, are not waived by failing to bring them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense–not what bears a false label of 'strategy'–based on what

3

investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show a reasonable probability that, but for counsel's errors, the result would have been favorably different. *Id*. at 693-94. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process. In *Lockhart v. Fretwell*, the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

506 U.S. 364, 369 (1993) (citations omitted).

### C.  Analysis and Conclusions

Petitioner contends that counsel was ineffective: (1) because "[a]ppellant's plea was done in ignorance and mistake of fact"; (2) "for failing to inform Appellant of an offer that would have

4

afforded him a more favorable sentence"; (3) "render[ing] Appellant's plea unknowingly, involuntarily, and unintelligently made"; (4) "for failing to conclude evidentiary hearing"; (4) because "Appellant was denied benefit of his agreement"; (6) because "appellant's sentence was procedurally and substantively unreasonable"; (7) because the "sentencing court erred enhancing Appellant under Title 21 U.S.C. §851"; (8) because the "sentencing court enhanced appellant for uncharged, dismissed or acquitted crimes"; (9) because the "sentencing court erred enhancing appellant for obstruction of justice"; and (10) because the "sentencing court erred enhancing appellant as leader/organizer." (R. 148 at PageID.776-786.)

The government responds that based on Petitioner's representations under oath, his plea was entered knowingly, voluntarily, and intelligently and the government notes that the Sixth Circuit also found Petitioner's plea was so made. (R. 161 at PageID.8887-8888.) The government further argues that Petitioner's counsel was effective. Specifically, the government contends that Petitioner "was offered the opportunity to stipulate to a two-point role enhancement or to reserve the right to contest a role enhancement while allowing the government the opportunity to seek a four-point role enhancement" and that the plea colloquy, affidavit of counsel, and attorney e-mail included in Petitioner's motion all show that Petitioner was informed and that he wanted to contest the role enhancement rather than stipulate to a lesser, two-point enhancement. (R. 161 at PageID.889.) With the four-point enhancement, Petitioner's guideline range would have been 360 months to life, but Petitioner's trial counsel successfully argued for a reduced range of 324 to 405 months, and his sentence of 340 months was within the lower end of that range. (R. 161 at PageID.890.) As to counsel's failure to conclude the evidentiary hearing, the government notes that trial counsel's affidavit indicates that counsel was able to present all testimony desired for the defense and that

Petitioner decided not to testify at the hearing. (R. 161 at PageID.890-891.) The government argues that Petitioner was given the benefit of his plea agreement, and that he did not enter into any cooperation agreement with the government and instead continued to engage in drug trafficking during the time period that Petitioner believes he should be credited with cooperating. (R. 161 at PageID.891-892.) Petitioner cannot legitimately complain about the sentence he received, which was 20 months lower than that estimated in the guideline worksheets attached to his plea agreement, and where the 340 month sentence was 80 months below the maximum allowed by the plea agreement. (R. 161 at PageID.892.) Petitioner's remaining grounds, six through ten, address sentencing issues that may only be raised on direct appeal rather than in a § 2255 motion. (R. 161 at PageID.892-893.)

Petitioner replies that the government's response was insufficient and that "the government failed to deny that they did in fact threaten a second 851 filing had Petitioner not taken the plea, and they failed to deny that their not filing was Petitioner's sole reason and benefit for taking the plea." (R. 162 at PageID.899.) Petitioner also argues that the "government failed to deny in the second issue that there was an offer of a two point role adjustment that would have afforded Petitioner a more favorable sentence, and that counsel's failure to inform him of this offer did amount to ineffective assistance." (*Id*.) Petitioner contends that the sworn affidavit of counsel was also inadequate and not supported, that he did not tell counsel he did not want to testify at the evidentiary hearing and that this fact issue should be resolved in an evidentiary hearing. (R. 162 at PageID.900.) Finally, Petitioner contends that the government did not deny that there is substance to the remaining claims regarding sentencing. (R. 162 at PageID.901.)

At the plea colloquy, Petitioner indicated that he had sufficient time to go over the plea agreement with his lawyer, that he understood the terms of the plea agreement and that he was satisfied with counsel's advice. (R. 134 at PageID.662.) The Court then went over the rights Petitioner had and that he would be giving up by pleading guilty. (R. 134 at PageID.663-664.)

The government summarized the material provisions of the Rule 11 plea agreement, including the stipulated factual basis, and government counsel expressly addressed the "variety of different issues being reserved regarding the sentencing guideline scoring." (R. 134 at PageID.665-666.) Government counsel specifically stated that the "government contends that Harrington should be assessed four points for role, that's plus four, for role in the offense under guideline Section 3B1.1(a), plus two for credible threat of violence under guideline Section 2D1.1(b)(2) based on Harrington's 2014 and 2015 convictions, plus two additional points for obstruction of justice under 2D1.1(b)(15) or 3C1.1, based on Harrington's feigned cooperation with the DEA investigation while he continued to engage in illegal methamphetamine trafficking." (R. 134 at PageID.666.) The government noted that if the Court agreed with the government's position, the total offense score would be 40, with a 19 criminal history score (placing Petitioner in Category VI), and the guideline range would be 360 months to life. (R. 134 at PageID.667.) Government counsel went on to explain that Petitioner reserved the right to contest the role adjustment and enhancements for credible threat of violence and for obstruction of justice as well as the scoring for his 1998 and 2002 convictions that were retroactively reduced to misdemeanors and his 2006 conviction that he claims was expunged. (R. 667-668.) It was also noted that Petitioner reserved the right to ask the Court for a downward variance of not less than 180 months or 15 years. (R. 134

at PageID. 668.) The agreement also provided that the sentence would not exceed 420 months' or 35 years' custody. (*Id*.)

Government counsel also explained that an 851 notice to enhance based on prior drug conviction had been filed by the government in this case and that if the Petitioner's plea was set aside for any reason, the government could file an amended notice that allege all the prior drug convictions. (R. 134 at PageID.669-70.) Defense counsel took a few minutes off the record to speak with Petitioner and returned indicating that Petitioner did have "a question regarding the notice pursuant to 851, and I've explained to him exactly what it says, and he understands that the language there is clear and that, notwithstanding the language, which we've gone over again, he wishes to proceed with the plea." (R. 134 at PageID.673.) When asked whether he did wish to continue with the plea, Petitioner responded that he did. (R. 134 at PageID. 673-674.)

The Court then assured Petitioner that "there's never any problem with asking questions . . . . It's a complicated agreement. . . .We want to make sure that you do understand everything here, and I know you're capable of it, but we have no problem taking the time to make sure you do, because this is a very important day, and this is your only time really, you know, to get those things figured out." (R. 134 at PageID.674.) The Court then asked Petitioner, "Do you feel like you are at least comfortable enough, sir, that you could ask questions, if you had any, of either myself or – directly or through your lawyer ask any questions that you had?" to which Petitioner responded, "Oh, thank you, I will." (R. 134 at PageID.674.) The Court asked Petitioner whether he understood that there were some items that he could later challenge but that the items that he agreed not to contest, from the bottom of page four to the top of five (base offense score of 32 +2

8

points for possessing methamphetamine where a minor is present), he "won't be able to disagree[] with it later" and Petitioner indicated that he understood that. (R. 134 at PageID.675.)

The Court then asked if Petitioner understood that because he waived his right to appeal the conviction on any grounds, "you won't be able to successfully argue that you had no idea your sentence could be so harsh, you won't be able to successfully argue I wasn't really guilty, I just pled guilty to get it over with or anything like that. You won't be able to say that you didn't understand what was going on" and Petitioner indicated that he did understand that. (R. 134 at PageID.676.) The Court then reiterated, "[A]gain, all the more important, then, that you do really understand so let's make sure that we answer any questions that you have" but Petitioner did not have any. (R. 134 at PageID.676-677.) Petitioner indicated that he understood that in this agreement he gave up his right to appeal his sentence as long as Judge Ludington did not sentence him any higher than 420 months. (R. 134 at PageID.678.) Petitioner assured the Court that he had not been made any promises outside the agreement, that he had not been promised he would receive any specific sentence, that no one had used any force or threats to make him plead guilty, and that he was pleading freely, voluntarily, and because he is guilty. (R. 134 at PageID.679.) A factual basis was elicited, and Petitioner pleaded guilty. (R. 134 at PageID.679-682.)

Where, as here, the court "has scrupulously followed the required procedure [under Rule 11], the defendant is bound by his statements in response to the Court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993). Since "courts must be able to rely on a defendant's statements during a plea colloquy, 'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always "patently incredible" and "patently frivolous or false."'" (R. 601 at PageID.4451) (quoting *Barnett v. United*

9

*States*, 2017 WL 160896 (E.D. Tenn. Jan. 13, 2017)). Therefore, I suggest that any claims regarding the plea taking process fail as his arguments are contradicted by his statements during the plea colloquy that he understood the terms of the agreement, that he would bring forward any questions that he had, and where his questions regarding the items he could contest and those that he could not at sentencing were explained to him, and where he stated that he was satisfied with his lawyer's advice. In addition, Petitioner was made aware and agreed that he would not be receiving any credit for cooperation because the plea agreement stated that the government would seek to add two additional points "for obstruction of justice under 2D1.1(b)(15) or 3C1.1, based on Harrington's feigned cooperation with the DEA investigation while he continued to engage in illegal methamphetamine trafficking." (R. 134 at PageID.666.)

I further suggest that despite his claims that counsel was ineffective for failing to conclude the evidentiary hearing, trial counsel's affidavit indicates that counsel was able to present all testimony desired for the defense and that Petitioner decided not to testify at the hearing. (R. 161 at PageID.890-891.) Even if the choice were made by counsel not to have Petitioner testify, that would be a strategic decision that does not show ineffective assistance; the more pertinent point being that counsel filed motions and argued them on behalf of his client. I therefore suggest that this ground lacks merit.

As to the effectiveness during sentencing, the government correctly notes that trial counsel did an excellent job in successfully arguing for a reduced range of 324 to 405 months (rather than the 360 months to life range the government proposed) and his sentence of 340 months was within the lower end of that range. (R. 161 at PageID.890.) Therefore, counsel was not ineffective.

Petitioner's remaining grounds wherein he complains about his sentence may only be raised on direct appeal. Since Petitioner was sentenced much lower than 420 months, Petitioner did not have the right to appeal his sentence; this reality was one that Petitioner indicated he understood this during the plea colloquy. (R. 134 at PageID.678.) Although Petitioner attempted to appeal his sentence, the Sixth Circuit granted the government's motion to dismiss the appeal based on the appellate waiver provision in Petitioner's plea agreement. (R. 146.) Petitioner's claims are not justiciable simply because he now raises them in the context of ineffective assistance. *United States v. Joiner*, 183 F.3d 635, 644 (7th Cir. 1999) ("[G]arden-variety attacks on his sentence he wants to raise [on direct appeal], in the guise of a claim of ineffective assistance of counsel, are exactly the sort of claims he knowingly and intelligently waived his right to present . . . .").

Finally, even if Petitioner could establish that counsel's performance fell below an objective standard, I suggest that he cannot show prejudice. In order to show prejudice in the context of a guilty plea, petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed.2d 203 (1985). Here, Petitioner does not even allege that he would have decided to go to trial absent counsel's advice. I suggest that Petitioner is unable to show prejudice and thus, that his motion should be denied.

I therefore recommend that the petition be denied.

### D. Evidentiary Hearing

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States

> attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on any of the allegations raised in his motion.

### E. Conclusion

For the reasons set forth above, I recommend denying Petitioner's motion.

### III. <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific

12

written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 3, 2019                                         S/ PATRICIA T. MORRIS
                                                                        Patricia T. Morris
                                                                        United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Daniel Jason Harrington #51508-039 at McKean Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 8000, Bradford, PA 16701.

Date: January 3, 2019                                          By s/Kristen Castaneda
                                                                                 Case Manager