UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                              Case No. 1:15-cr-20597-1

v.                                                  Honorable Thomas L. Ludington

DANIEL JASON HARRINGTON,

          Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE AND DENYING DEFENDANT'S REQUEST FOR APPOINTMENT OF COUNSEL AS MOOT**

On February 7, 2017, Defendant Daniel Jason Harrington pled guilty to one count of knowingly possessing with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). ECF No. 121. He was sentenced to a 340-month term of imprisonment to be followed by an eight-year term of supervised release. ECF No. 142. He is currently housed at Federal Correctional Institute, McKean ("FCI McKean") in Pennsylvania.

On February 27, 2021, Defendant filed a pro se motion for compassionate release under 18 U.S.C. § 3582 as well as a request for the appointment of counsel. ECF Nos. 178, 179. Because of mailing delays, Defendant's Motion and request were not docketed until March 17, 2021. On March 29, 2021, Plaintiff, the United States of America (the "Government") filed a response brief in opposition. ECF Nos. 181. Defendant filed a reply brief shortly thereafter. ECF No. 185. For the reasons set forth below, Defendant's Motion for Compassionate Release will be denied with prejudice, and his request for the appointment of counsel will be denied as moot.

# I.

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 960 F.3d 831, 835–36 (6th Cir. 2020). On January 27, 2021, Defendant submitted a written request for compassionate release to the BOP based upon the incapacitation of his spouse. ECF No. 179 at PageID.1127. According to records submitted by the Government, the BOP denied his request on February 18, 2021. ECF No. 181-3 at PageID.1162. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate release on his own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

In his Motion, Defendant presents four reasons for release that he claims are "extraordinary and compelling" for purposes of § 3582(c)(1)(A). Each reason is considered in turn below.

**1.**

Defendant's first reason for release is the alleged incapacitation of his wife, who is the primary caregiver for Defendant's minor son. While USSG § 1B1.13 is no longer binding, "some district courts continue to lean on [it] when defining 'extraordinary and compelling circumstance'" in the context of familial hardship." *United States v. Davis*, No. 2:13-CR-00046-8-JRG, 2021 WL 829367, at *7 (E.D. Tenn. Mar. 4, 2021); *see also United States v. Taylor*, No. 19-20056, 2021 WL 21760, at *2 (E.D. Mich. Jan. 4, 2021) ("Although the Sixth Circuit held that U.S.S.G 1B1.13 does not apply to compassionate release motions filed by imprisoned individuals, it remains a measure by which district courts can evaluate what constitutes extraordinary and compelling circumstances."), *reconsideration denied*, No. 19-20056, 2021 WL 927525 (E.D. Mich. Mar. 11, 2021).

Under § 1B1.13(1)(C)(i), the movant seeking compassionate release to care for a minor child must establish that (1) the child's caregiver is "incapacitated" and (2) that the movant "would be the only available caregiver." *Davis*, 2021 WL 829367, at *7; *see also United States v. Cole*, No. 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021) ("[D]istrict courts have routinely denied motions for compassionate release when the defendants cannot show that they would be the only available caregiver of a minor child, even if their incarceration imposes substantial burdens on a spouse or co-parent to a minor child."). Though no longer binding, this Court finds the test set forth in § 1B1.13(1)(C)(i) to be persuasive.

In his Motion, Defendant states that "he has an 8-year-old son that is severely autistic [and] who has no primary care provider due to the child's mother['s] medical conditions." ECF No. 179

at PageID.1065–66. Defendant claims that his wife was recently diagnosed with a recurrent brain tumor that is causing her "to go blind" and "may very well [become] terminal." *Id.* at PageID.1044. The Government, in response, contends that Defendant's early release is unnecessary because Defendant's father—with whom Defendant would live with upon release—already resides with Defendant's wife and son and could provide care.[1] ECF No. 181 at PageID.1146. Defendant, in his reply brief, contends that his father is "elderly" and that caring for an autistic child and a woman with a brain tumor is "not an easy task." ECF No. 185 at PageID.1181.

Defendant's argument is unpersuasive for two reasons. First, even if his allegations are believed, Defendant has not shown that he is the only available caregiver. Based on Defendant's assertions, it is unclear when his wife will lose her vision or whether she will develop terminal complications from her brain tumor. ECF No. 179 at PageID.1044. Similarly, Defendant's claim that his father is elderly, and therefore a less than ideal caregiver, does not establish that his father would be incapable of caring for Defendant's wife or minor son. Second, the documentation that Defendant included with his Motion is inconsistent with his representations. Specifically, the medical records regarding Defendant's wife do not state that she is "go[ing] blind" or will soon become incapacitated. *Id.* at PageID.1118 (stating that the tumor is "causing [] headaches and vision changes" and that Defendant's wife should avoid driving); *see also United States v. Marshall*, No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (holding that the movant did not demonstrate his grandfather's incapacitation where he "fail[ed] to provide evidence that [his grandfather] [was] incapacitated, i.e. that he cannot carry on any self-care")

---

[1] The BOP denied Defendant's request for compassionate release on the same basis. *See* ECF No. 181-3 at PageID.1162 (noting that Defendant would not "be[] the only caregiver available to provide primary care for [his] child").

Based on the foregoing, Defendant has not demonstrated that wife is incapacitated or that he would be the only available caregiver for his wife and minor son.

**2.**

Defendant's second reason for release is his allegedly harsh sentence. Defendant argues that his sentence "is an unusually long sentence in comparison to the average sentence of those sentenced for drug crimes, and disproportionately sever[e] compared to sentences imposed on leaders of major drug trafficking organizations." ECF No. 179 at PageID.1066. Defendant cites the federal prison sentences of certain multi-national drug traffickers who appear to have received shorter terms of imprisonment than Defendant. *See id.* at PageID.1045.

Defendant correctly notes that other courts have found "that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020); *see also United States v. McDonel*, No. 07-20189, 2021 WL 120935, at *4 (E.D. Mich. Jan. 13, 2021) ("[A]t least two circuit courts have found that this 'drastic change' in the law, eliminating such lengthy mandatory sentences, when considered along with a defendant's individual circumstances such as youth and prison behavior, constitutes an extraordinary and compelling reason to reduce a sentence.").

The problem with Defendant's argument, as he himself acknowledges, is that "this [case] is not a stacked 924(c) case." ECF No. 179 at PageID.1052. While Defendant maintains that the "principle is the same," *id.*, the cases that he cites were not premised on abstract disparities in sentencing, but on substantial changes in law affecting the applicable sentence. *See, e.g.*, *McCoy*, 981 F.3d at 285 (affirming compassionate release where elimination of "sentence-stacking" would

have resulted in a 30-year reduction in sentence). Defendant has identified no such change in the law here. Indeed, Defendant's advisory guideline range when he was sentenced in September 2017—324 to 405 months—would presumably be the same if he were resentenced today.

Accordingly, Defendant has not demonstrated that the length of his sentence is an extraordinary and compelling reason for release.

**3.**

Defendant's third reason for release is his rehabilitation. The record reflects that since entering custody, Defendant has obtained numerous certificates for his completion of postsecondary biblical education as well as various forms of correctional programming. *See* ECF No. 179 at PageID.1080–1106. Defendant's Motion also includes letters from a former inmate at FCI McKean and from FCI McKean's Reentry Affairs Coordinator, both of whom praise Defendant for his diligence in rehabilitation. *Id.* at PageID.1107–1110.

Defendant's efforts at rehabilitation are commendable and would certainly seem "extraordinary." Nonetheless, "Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief." *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020) (citing 28 U.S.C. § 994(t)); *United States v. Occhipinti*, No. 1:14-CR-00229-JG-1, 2021 WL 1549991, at *3 (N.D. Ohio Apr. 20, 2021) ("[R]ehabilitation alone is typically not enough to justify compassionate release."); *United States v. Hatcher*, No. 01-80361, 2021 WL 1056841, at *3 (E.D. Mich. Mar. 19, 2021) ("[The court] is precluded from granting compassionate release based upon rehabilitation alone."). Moreover, without minimizing his accomplishments, Defendant has not shown that his rehabilitation is so "compelling" as to justify the drastic sentence reduction sought here. Indeed, Defendant has served only a fraction of his 340-month term of imprisonment.

Accordingly, Defendant has not shown that his rehabilitation constitutes an extraordinary and compelling reason for release.

**4.**

Defendant's last reason for release is the novel coronavirus ("COVID-19") pandemic. Defendant argues that it is essentially impossible to comply with CDC guidance regarding social distancing and other preventative measures while in federal custody. ECF No. 179 at PageID.1067.

The Sixth Circuit's decision in *Jones*, *supra,* suggests that an inmate may have an extraordinary and compelling reason for release based on COVID-19 where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 984 F.3d at 520. Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[2] *Id.* (quoting *United*

---

[2] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 984 F.3d at 521 n.1.

*States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at 521.

Defendant is a 48-year-old male with no apparent risk factors for COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/4BYY-UXG4] (last visited May 6, 2021) (listing risk factors for severe illness from COVID-19). According to medical records filed by the Government, Defendant contracted and recovered from COVID-19 in November 2020. ECF No. 183-1 at PageID.1174. Defendant's records also reflect that he is now fully vaccinated against COVID-19, having received his second dose of the Pfizer-BioNTech vaccine on March 2, 2021.[3] ECF No. 183-2 at PageID.1177. The Pfizer-BioNTech vaccine is exceptionally safe and effective in preventing illness from COVID-19. *See Pfizer-BioNTech*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html [https://perma.cc/ER44-HVNM] (last visited Apr. 23, 2021).

Accordingly, given Defendant's vaccination against COVID-19 and his lack of any apparent risk factors for the disease, the COVID-19 pandemic does not constitute an extraordinary and compelling reason for release.

---

[3] The BOP is currently reporting that 10 staff members and 502 inmates at FCI McKean have been fully inoculated against COVID-19. *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/V5TL-NVY9] (last visited May 6, 2021). Additionally, the facility has only two active COVID-19 cases, both in staff members. *Id.*

**C.**

Based on the foregoing, Defendant has not demonstrated an extraordinary and compelling reason for release as required under 18 U.S.C. § 3582(c)(1)(A). Consequently, this Court declines to consider whether the § 3553 factors would warrant a sentence reduction. *See Elias*, 984 F.3d at 519. Defendant's Motion for Compassionate Release will be denied.

**II.**

Defendant submitted a request for the appointment of counsel along with his Motion for Compassionate Release. The request merely states, "I am requesting that learned counsel be appointed to assist me moving forward." ECF No. 178 at PageID.1038. Because Defendant's Motion for Compassionate Release will be denied, his request for the appointment of counsel will be denied as moot.

**III.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 179, is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's Request for Appointment of Counsel, ECF No. 178, is **DENIED AS MOOT**.

Dated: May 6, 2021                                         s/Thomas L. Ludington
                                                           THOMAS L. LUDINGTON
                                                           United States District Judge